IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jolene A. Croffoot, )<br>)<br>    *Plaintiff*, )<br>)<br>    v. )<br>)<br>Carolyn W. Colvin, )<br>Acting Commissioner of the )<br>Social Security Administration, )<br>)<br>    *Defendant*. ) | Case No. 14 CV 50159<br><br>Magistrate Judge Iain D. Johnston |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jolene Croffoot, brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision denying her social security disability benefits. For the reasons set forth below, the decision is remanded.

## I. BACKGROUND[1]

On September 16, 2011, Plaintiff filed an application for disability insurance benefits, alleging a disability beginning on May 1, 2007. R. 98. Plaintiff asserted that the nerve damage to her right leg, spine damage and depression became severe enough to prevent her from working as of her onset date, but she continued working until October 1, 2010. R. 114. On January 23, 2013, the Administrative Law Judge ("ALJ") held a hearing to review the Social Security Administration's denial of Plaintiff's request for benefits. R. 23-49. Plaintiff was represented by an attorney

---

[1] The following facts are only an overview of the medical evidence provided in the administrative record.

1

at the hearing. Plaintiff and vocational expert James Engelkes ("VE") testified at the hearing.

At the hearing, Plaintiff testified that she was 40 years old and had a 10th-grade education. R. 24. She had a driver's license and drove approximately 3 days a week to go to doctor appointments and the grocery store with her husband. R. 24-25. Plaintiff lived with her husband, daughter and two step-children. R. 34. Her husband was employed full-time with the sheriff's department. R. 34-35, 180.

In 2001, Plaintiff received an epidural for the birth of her daughter. R. 29, 183. Plaintiff testified that the needle went through a main nerve resulting in her right knee and leg going numb. R. 29, 183. At the time of the hearing, Plaintiff still had numbness in her right leg as a result. R. 29. Plaintiff testified that she could not sit very long because her knee would start to hurt. R. 29. She rated her knee pain a 5 or 6 out of 10 every day. R. 30. Plaintiff's leg swelled from the knee down and she had to ice and elevate her knee daily. R. 30. Plaintiff elevated her leg approximately 20 percent of the day. R. 37-38. Plaintiff was unable to stand for long periods of time because her leg would suddenly give out, causing her to fall. R. 30. Plaintiff testified that her leg had gotten much weaker since her alleged onset date in 2007. R. 30-31. Plaintiff explained that physical therapy and her knee brace no longer helped. R. 31.

Since 2009, Plaintiff had fallen at least three times a day. R. 31. Plaintiff testified that she could only sit for 20 minutes at a time and could stand for less. R. 32. Plaintiff also experienced more pain in her knee in cold temperatures due to

2

arthritis from the nerve damage. R. 33. Plaintiff did not use a cane or a handicap sticker, but testified that Dr. Christopher Jelinek, her treating physician, had insisted that she use a handicap sticker. R. 35.

Plaintiff could cook a meal, but needed to alternate between sitting and standing frequently. R. 34. Plaintiff did laundry, but needed assistance with grocery shopping. R. 34. Plaintiff testified that it was difficult to care for her family, but she needed to because her husband worked. R. 34-35. Plaintiff testified that if she were to work full-time, she would miss approximately 3 days a week due to her pain. R. 33-34.

Plaintiff last worked in 2010 as a part-time gate guard for a gated community. R. 25-26. She worked 30 hours per week, but was eventually reduced to 1 day a week after falling at work. R. 26, 36. In 2007, Plaintiff worked part-time as a cook at a community college, but was fired because she fell too often at work and missed too many days of work due to her leg. R. 26-27, 31, 116. In 1998, Plaintiff did clerical work in an office, where she sorted bills, put folders away and ran errands. R. 42, 123-24. The position required both sitting and standing. R. 43. Plaintiff last applied for a job in 2012 as a cook, but testified that she did not get an offer because she was a liability by being prone to falling at work. R. 36-37. Plaintiff looked for a sedentary job, but could not find any work. R. 37.

The ALJ asked Plaintiff to explain her report to Dr. Jelinek, on April 19, 2011, that she was working at Skate Station part-time. R. 38-39, 264. Plaintiff testified that she went to Dr. Jelinek to discuss working at Skate Station because it

3

was close to Plaintiff's house and she would not be skating. R. 39. However, Plaintiff stated that she was not working there at the time and never worked there. R. 39. Plaintiff explained that she was there all the time because it was close to her home and her daughter went there to skate. R. 39.

The VE testified that Plaintiff's past work as a cook and general office clerk (DOT 209.562-010) was unskilled, light work. R. 39-40, 43, 176. Plaintiff's past work as a gate guard was unskilled, sedentary work. R. 40. The ALJ provided the VE with a hypothetical claimant with Plaintiff's age, education and work history who could perform a restricted range of light work, such that the claimant could only walk and stand 2 hours out of an 8-hour workday, lift and carry 20 pounds occasionally and 10 pounds frequently, with occasional postural limitations and no exposure to wet surfaces, vibration, unprotected heights, heavy equipment and operating machinery. R. 40-41. The VE testified that a claimant with these limitations could perform Plaintiff's past work as a gate guard and office clerk. R. 41-43. The VE noted that the DOT description of an officer clerk would require standing six out of eight hours, but in his opinion, there was office work in Illinois that would accommodate Plaintiff's limitations, including the need to alternate between sitting and standing every 15 to 20 minutes. R. 43-44, 46. However, if the claimant was away from her workstation for more than 30 seconds every 20 minutes or missed more than 2.5 days per month, it would preclude her from this type of work. R. 46-47. Additionally, if the claimant had to elevate her legs 20

4

percent of the day, regularly fell at work and was unable to lift and carry as required by her job she would be precluded from full-time work. R. 45-46.

Plaintiff's attorney questioned the VE and clarified that the number of gate guard positions in Illinois reflected full-time employment. R. 47. Based upon questioning, the VE also clarified that an office clerk would on average need to walk between 100 feet and half a mile in a work day. R. 47-48.

On March 29, 2013, the ALJ issued his ruling that Plaintiff was not disabled. R. 9-16. The ALJ found that Plaintiff had the following severe impairments: leg and back injuries from epidural anesthesia with chronic progressive low back pain and numbness, weakness, tingling and pain in her right lower extremity; "pitting edema of the right leg and pedal edema more of dependent edema;" and cysts in the right knee. R. 11. The ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria for any listing impairment and specifically found that Plaintiff did "not manifest the significant disorganization of gross motor function in the extremities" as set out in the listings for neurological disorders under 11.00*ff*. R. 12-13. The ALJ concluded that Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work, but retained the ability to lift 20 pounds occasionally and 10 pounds frequently, with certain postural limitations and the avoidance of wet surfaces, vibrations, unprotected heights, heavy equipment and operating machinery. R. 13. The ALJ found that Plaintiff could not perform any past relevant work, but had the RFC to perform work as a general office clerk. R. 15-16.

5

## II. LEGAL STANDARD

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Additionally, as the Seventh Circuit has repeatedly held, the federal courts cannot build the logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist.

LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014) ("In the Seventh Circuit, an ALJ's decision can be supported by substantial evidence – or even a preponderance of the evidence, as it is here – but still will be overturned if the ALJ fails to build a 'logical bridge' from the evidence to her conclusion." (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996))); *Jensen v. Colvin*, No. 10 CV 50312, 2013 U.S. Dist. LEXIS 135452, at *33-34 (N.D. Ill. Sept. 23, 2013).

### III. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed or remanded because the ALJ improperly: (1) determined whether a listing was satisfied; (2) determined her RFC; and (3) assessed her credibility.

**A. Listings**

The ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment. In doing so, the ALJ referenced only one impairment, Listing 11.00 for neurological disorders, finding that Plaintiff did "not manifest the significant disorganization of gross motor function in the extremities as described" by the listing. R. 12-13. Plaintiff disagrees with the ALJ's finding at step three, arguing the analysis was insufficient and that the ALJ should have analyzed her impairments under the musculoskeletal listings, namely Listings 1.04(A) for disorders of the spine and 1.02(A) for major dysfunction of a joint. 20 C.F.R. Pt. 404, Subpt. P. App. 1, §§ 1.04(A), 1.02(A). Plaintiff argues her medical records support a finding that she met the requirements for these listings, or alternatively that she medically equaled the criteria for these listings.

7

The Commissioner argues that although the ALJ's step three analysis was limited, his "discussion of the evidence throughout his decision provides substantial evidence supporting his step three analysis." Defendant's Memorandum at 2, Dkt. 9. The Court agrees that the ALJ's decision must be read as a whole. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). However, in reviewing the ALJ's opinion in this case, the Court finds the listing analysis insufficient. *See Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015) (remanding due to ALJ's perfunctory listing analysis).

The ALJ reviewed some of the medical evidence and Plaintiff's testimony in his RFC determination, noting that Plaintiff had a long history of right leg pain and cysts with reduced strength, sensation, reflexes and flexion in the leg. R. 178. The ALJ even specifically acknowledged the findings of the consultative examiner regarding Plaintiff's musculoskeletal limitations and adopted these findings in determining that Plaintiff had severe impairments that included leg and back injuries from the epidural, numbness, weakness, tingling and pain in her right leg, "pitting edema of the right leg and pedal edema more of dependent edema," and cysts in the right knee. *See* R. 11, 14-15, 425-26. However, the ALJ did not indicate whether he considered and dismissed this evidence in relation to a musculoskeletal listing, despite Plaintiff's attorney's brief to the ALJ specifically identifying Listing 1.04.

On appeal, Plaintiff argues she has met or medically equaled the requirements in Listings 1.04(A) and 1.02(A). Listing 1.04(A) describes disorders of

8

the spine that result in compromise of a nerve root or the spinal cord and requires a claimant to show "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.

Listing 1.02(A) describes major dysfunction of a joint due to any cause and requires "gross anatomical deformity" and "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)" along with "[i]nvolvement of one major peripheral weight-bearing joint [] resulting in inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 1.02.

The Commissioner argues that the ALJ did not err in reviewing only the neurological listings because Plaintiff's impairments resulted from nerve damage after receiving epidural anesthesia, not from a spinal disorder. Plaintiff's medical records reveal several diagnoses from different doctors attempting to determine the cause of Plaintiff's leg impairments. *See* R. 183 (5/2001: persistent sensory deficits, numbness and L4-L5 weakness from epidural, MRI revealed no hematoma); R. 260 (7/3/2001: possible L2-L4 radiculopathy[2], lumbar plexopathy[3] or neuropathy[4]); R.

---

[2] Radiculopathy is a disorder of the spinal nerve roots. STEDMAN'S MEDICAL DICTIONARY 1622 (28th ed. 2006).
[3] Plexopathy is a disorder involving one of the major peripheral neural plexuses. STEDMAN'S MEDICAL DICTIONARY 1513 (28th ed. 2006).
[4] Neuropathy is a disorder affecting any segment of the nervous system. STEDMAN'S MEDICAL DICTIONARY 1313 (28th ed. 2006).

9

205 (7/17/2001: possible L2-L4 lumbar plexopathy); R. 206 (8/2001: Plaintiff neurologically intact); R. 184 (2002: residual numbness, pain and swelling in right knee and ruling out "ligament type dysfunction but internal derangement of the knee is still a possibility"); R. 185 (2003: considering joint involvement besides nerve damage and ordered orthopedic consultation to determine treatment for "nerve dysesthetic type discomfort"); R. 188 (2002: MRI showed cysts compressing the nerves and possibly causing knee swelling); R. 186 (4/22/2004: paresthesias in L3-L4 distribution and did not believe cysts were causing the discomfort, ordered MRI to evaluate L3-L4 nerve root irritation); R. 190, 201 (4/2004, 5/2004: right knee pain without apparent cause); R. 191 (5/2004: MRI ruled out nerve root involvement); R. 402 (2006: knee pain possibly caused by ligament instability and not a neuropathy, ordered MRI of knee and lumbar spine); R. 326 (2007: unsure if radiculopathy is caused from knee or back); R. 277 (2010: pain in knee is neuropathic). Although the doctors seem to agree that the cause related to the birth of Plaintiff's child and possibly from the epidural she received, they seem unsure why her knee issues have persisted since 2001. Therefore, it is difficult for this Court to determine how these symptoms relate to either the listings in 1.00 or 11.00 exclusively, especially without a medical opinion or testimony from a medical expert on this issue.

Moreover, Plaintiff has cited numerous medical records to support a finding that she met or medically equaled the criteria in Listings 1.04(A) and 1.02(A). *See* R. 34-35, 136, 146 (needs assistance with household chores and shopping); R. 188

10

(cysts compressing on nerve roots); R. 205 (numbness in right leg following epidural with EMG confirming weakness in right leg muscles and reflexes at 1+/4); R. 259-60 (some atrophy and weakness of right quadriceps and decreased sensation in right knee and calf with possible radiculopathy, lumbar plexopathy or neuropathy); R. 326 (radiculopathy and cysts); R. 425-26 (2+ pitting edema of right leg, numbness in right leg, low back and leg pain with straight leg raising tests, muscle strength of 4/5 in right leg, wobbling gait due to low back pain, difficulty getting on and off exam table, squatting and walking heel to toe, unable to walk on heels, limited flexion, decreased sensation and reflexes in right leg and foot, can walk 50 feet, but recommended using an assistive device); R. 428 (reduced range of motion in the spine).[5] In reviewing the evidence, Plaintiff has arguably exhibited the requisite symptoms to meet or medically equal a musculoskeletal listing. The Commissioner has not responded to this evidence[6] and instead stands on the proposition that the ALJ's analysis was proper because the musculoskeletal listings specifically state

---

[5] The Court notes that some of the plaintiff's medical records predate Plaintiff's alleged onset date in 2007. However, the Court still finds these records relevant because the alleged injury causing Plaintiff's knee and back impairments occurred in 2001.

[6] The Commissioner summarily asserts that Plaintiff failed to show muscle atrophy, as required by Listings 1.02(A) and 1.04(A). *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 1.00(E)(1). However, the regulations also state that an "[i]nability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss." 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 1.00(E)(1); *see also* R. 425 (difficulty squatting and walking heel to toe and unable to walk on heels). Additionally, the Commissioner argues that Plaintiff was required to show she used an assistive device to establish an inability to ambulate effectively under Listing 1.02(A). While this is one definition in the regulations, the regulations also provide a non-exhaustive list of examples of ineffective ambulation, such as an inability to walk a block at a reasonable pace on rough or uneven surfaces, or the inability to carry out routine activities, like shopping and banking. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2); *see also* R. 34-35, 136, 146 (needs assistance with household chores and shopping); R. 425-26 (wobbling gait, can walk 50 feet and recommended using an assistive device).

that "[i]mpairments with neurological causes are to be evaluated under 11.00ff." 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 1.00(B)(1); Defendant's Memorandum at 3, Dkt. 9. The Commissioner's citation is correct; however, the medical evidence in the record does not make it as clear that Plaintiff's impairments are purely neurological and should only be evaluated under the listings in 11.00, particularly when Listing 1.04 also requires neurological deficits. *Compare* 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 11.08 (requiring "nerve root lesions") *with* 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 1.04, 1.04(A) (requiring "compromise of a nerve root" along with "neuro-anatomic distribution of pain"); *see also* 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 1.00(E)(2) ("*More serious* neurological deficits (paraparesis, paraplegia) are to be evaluated under the criteria in 11.00ff.") (emphasis added). Just as the ALJ should not play doctor by independently evaluating the medical evidence, neither should this Court. *See Hutcherson v. Comm'r of Soc. Sec.*, No. 1:13-cv-01512-JEH, 2016 U.S. Dist. LEXIS 23898, at *18 n.5 (C.D. Ill. Feb. 26, 2016); *Swagger v. Colvin*, No. 14 CV 50020, 2015 U.S. Dist. LEXIS 151502, at *17 (N.D. Ill. Nov. 4, 2015).

In light of the ALJ's finding that Plaintiff had severe impairments relating to her leg and back symptoms and the overlap between the neurological deficits in listings 1.00 and 11.00 and the medical records, the ALJ should have evaluated the musculoskeletal listings or at least addressed listing equivalence. The regulations describe a list of impairments that are considered presumptively disabling when specific criteria are met. *See* 20 C.F.R. §§ 404.1520(d), 404.1525(a). However, where a claimant has a combination of impairments that do not meet a listing, the

ALJ must determine whether the impairment is medically equivalent to a particular listing. *See* 20 C.F.R. §§ 404.1526(b)(3), 404.1529(d)(3). If the ALJ in this case considered and rejected the relevant evidence in relation to a musculoskeletal listing or listing equivalency, he should have explained this in his opinion so this Court could properly trace the path of his reasoning. *See Washington v. Barnhart*, 481 F. Supp. 2d 905, 916-17 (N.D. Ill. 2007) (finding that absent a discussion of favorable medical evidence and its application to the listing, the court was unable to perform any sort of meaningful judicial review). The lack of listing analysis from the ALJ leaves this Court with insufficient information to determine the appropriateness of which listing should have been evaluated, and it is not for this Court to build the logical bridge on behalf of the ALJ. *See Mason*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19.

In remanding, this Court is taking no position on whether Plaintiff meets or medically equals a listed impairment. However, remand is warranted so the ALJ can thoroughly develop his step three analysis and build a logical bridge from the evidence to his conclusions. Furthermore, it may be beneficial for the ALJ to consult a medical expert on equivalency to clarify some of Plaintiff's symptoms and their neurological causes. *See Minnick*, 775 F.3d at 935 (stating that a finding of medical equivalence requires an expert's opinion on the issue); HALLEX I-2-5-34 A.

**B. RFC & Credibility**

Given that this case is being remanded to the ALJ for additional analysis at step three, the Court will only briefly address Plaintiff's remaining arguments

13

because the ALJ will likely have to reconsider his RFC and credibility determinations in light of any new findings. Plaintiff argues that the ALJ improperly determined her RFC by not evaluating Plaintiff's allegations that she could not sit for prolong periods, needed to elevate her leg, and was prone to falling and that Plaintiff had mild mental limitations. Plaintiff also argues that the ALJ failed to properly evaluate her credibility in relation to allegations of pain. These alleged errors are related and will require the ALJ to provide additional explanation on remand.

In the RFC determination, the ALJ did not include any limitation as to the amount of time Plaintiff could continuously sit, despite Plaintiff's testimony that she could only sit 15 to 25 minutes before experiencing pain and the consulting examiner's opinion that Plaintiff's impairments affected her ability to continuously sit. *See* R. 29, 32, 426. Although the ALJ did not indicate how much weight he gave to the consulting doctor's opinion, the ALJ relied on the doctor's other findings throughout his decision. Moreover, in the hypothetical to the VE, the ALJ acknowledged that Plaintiff needed to alternate between sitting and standing every 15 to 20 minutes. R. 46. Nevertheless, the ALJ did not include this limitation in Plaintiff's RFC.

Additionally, the ALJ's only explanation for not including Plaintiff's need to elevate her leg in the RFC consists of this one sentence: "The evidence does not support a need for an accommodation to elevate her leg, as she testified." R. 15. On remand, the ALJ should also take the opportunity to further explain his finding. It

could be that the ALJ was not persuaded by Plaintiff's testimony because there was no opinion evidence to support this need, despite evidence of leg swelling and edema in the record. Nevertheless, without an explanation or reference to specific evidence that supported his determination, it is unclear why the ALJ made this finding. Such a finding is important because the VE testified that if Plaintiff needed to elevate her leg 20 percent of the work day, she would be precluded from full-time employment. R. 45.

The VE's opinion was similar if Plaintiff regularly fell at work. But, the ALJ did not explicitly determine whether Plaintiff's falling would limit her ability to work. Instead, the ALJ merely mentioned that around April 2011, Plaintiff told her physical therapist that she fell only twice in the past year, R. 14, 699, which was inconsistent with her testimony that since 2009, she had fallen at least three times a day when she was on her feet the whole day or was alternating between sitting and standing. R. 31. The ALJ seemed to gloss over Plaintiff's testimony and focused on Plaintiff's part-time work as a gate guard. However, Plaintiff's past work does not shed much light on the ALJ's decision because she sat most of the day at that job, and was ultimately let go for falling at work. Furthermore, as Plaintiff points outs, she testified that her leg had gotten progressively weaker since 2007 and the consulting examiner noted Plaintiff's "wobbling gait" and recommended the use of an assistive device. R. 30-31, 425-26. The ALJ should also further assess whether Plaintiff's mental limitations affected her ability to work, such that they needed to be included in the RFC. *See* 20 C.F.R. § 404.1545(a)(2)-(3) (stating that in

assessing a RFC, the ALJ is required to consider all of the claimant's medically determinable impairments, both severe and non-severe, and all relevant evidence in the record).

The Court is less troubled by the ALJ's credibility determination as it related to her work at Skate Station in light of several inconsistencies in the record. *Compare* R. 39 (Plaintiff testified the she was not working at Skate Station at the time of the hearing and never worked there) *with* R. 178 (counsel's brief stating that Plaintiff worked part-time as a skating rink employee); R. 264 (in April 2011, Plaintiff stated she was working part-time at Skate Station). But, this Court should point out that on remand, the ALJ should ensure to consider Plaintiff's subjective symptoms in light of the Social Security Administration's new guidance in Social Security Ruling 16-3p. SSR 16-3p (eliminating the term "credibility" to "clarify that subjective symptom evaluation is not an examination of the individual's character" and outlining a two-step process to evaluate impairment-related symptoms). Moreover, the ALJ should ensure to thoroughly explain his findings. *See* SSR 16-3p ("We may or may not find an individual's symptoms and related limitations consistent with the evidence in his or her record. We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions.").

## IV. CONCLUSION

For the reasons stated in this opinion, this Court finds that remand is warranted so that the ALJ may build a logical bridge between the evidence in the record and his ultimate conclusions. Accordingly, Plaintiff's motion for summary judgment (Dkt. 8) is granted, and the Commissioner's motion (Dkt. 9) is denied. The decision of the ALJ is remanded for further proceedings consistent with this opinion.

Date: April 11, 2016      By: _____
                                                        Iain D. Johnston
                                                        United States Magistrate Judge